

U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED
TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET

The following constitutes the ruling of the court and has the force and effect therein described.

Signed March 20, 2014

United States Bankruptcy Judge

_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| JOSEPH YAMMINE, | § | |
| | § | |
| Debtor, | § | Case No. 14-40201-rfn-13 |
| | § | |
| H. A. SHABAN, | § | |
| | § | |
| Creditor. | § | |

**FINDINGS AND CONCLUSIONS IN SUPPORT OF
ORDER GRANTING H. A. SHABAN'S MOTION FOR RELIEF
FROM THE AUTOMATIC STAY AGAINST REAL PROPERTY**

On March 12, 2014, the court heard the motion of H. A. Shaban for relief from the automatic stay. In an oral ruling from the bench, the court granted Shaban's motion. The court issues the following findings and conclusions in support of its order granting the motion to lift

the automatic stay.  These findings and conclusions replace those announced by the court on the record.

The evidence of record shows that the debtor owes Shaban $107,000.  The debtor's obligations to Shaban matured in full on July 1, 2013.

In his plan, the debtor proposes to pay an arrearage of $833.00 on Shaban's note through the plan.  He otherwise makes no provision in the plan to pay Shaban.  Indeed, even in section G of the plan, the Debtor makes no mention of Shaban.  At the hearing on the motion to lift stay, the debtor suggested that he would pay Shaban direct outside of the plan.  But, outside of the plan, the pay direct obligation is the sum of $107,000 which, unless Shaban agreed otherwise, would have to be paid in a lump sum.  Clearly, the Debtor has no ability to do this.

If the debtor chose to pay the $107,000 arrearage through the plan, the current plan payment of $665.00 per month would have to be adjusted significantly.  At an interest rate of six percent (6%) (the proposed interest rate for payment of other secured creditors), the debtor's payment to Shaban alone would have to be $1,933.28 per month.  This does not include the amounts required to pay other secured claims in the plan or attorneys' fees and the trustee's fee.

Under the terms of his note to Shaban, the debtor was to make monthly payments of $833.00.  This, he could not do.  It is not credible for the debtor now to suggest that he can pay almost $2,000 per month on this obligation.

The debtor argued that Schedules I and J show that he can pay the Shaban note over the term of the Plan.  The court does not believe that the debtor's schedules accurately reflect his financial condition.

On Schedule I, the debtor says that he makes $12,400 per month from his work as a contractor and as the owner of certain rental properties.  But, Schedules I and J are conclusory at

best. Schedule I reflects a net income, and, as such, shows no expenses associated with either the contracting business or the home rental business. Moreover, in his statement of financial affairs, the debtor says that he earned a gross income of $3,200 in all of 2013. Because of the inconsistencies between the schedules and the statement of financial affairs, the court doubts that either is reliable.

What is known is that the debtor borrowed $100,000 from Shaban because he was in financial difficulty in 2012. In the year and half after borrowing the money, the debtor made only one payment, which even he concedes was no more than $5,000.

The record demonstrates that the Debtor has no ability to propose a plan that will pay Shaban in full. There is no reasonable likelihood of an effective reorganization. Consequently, the stay should be lifted to permit Shaban to exercise all rights that he would be entitled to exercise in the absence of the automatic stay.

# # # END OF FINDINGS AND CONCLUSIONS # # #